[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Appellant, Frederick Treesh, appeals from a judgment entry of the Lake County Court of Common Pleas overruling his petition for postconviction relief without a hearing.
Late in the evening of August 27, 1994, appellant, Keisha Harth ("Harth"), Anthony Washington ("Washington"), and Benjamin Brooks ("Brooks"), were driving throughout the Cleveland area seeking crack cocaine. After depleting their supply of cocaine, they decided that they needed to rob a store to obtain more money to purchase drugs. Washington directed them to the Vine Street News, an adult bookstore in Eastlake, Ohio.
Appellant and Brooks entered the store, leaving Harth and Washington in their Pontiac Sunbird. Appellant reached under his T-shirt, pulled out a nine millimeter semi-automatic Browning high-power handgun, "cocked" it, and pointed it at the store clerk, Louis Lauver ("Lauver"). Appellant ordered Lauver "not to move, not to push any buttons, not to call out or anything" and asked where the armed security guard was located. Lauver silently nodded his head, motioning toward the back of the store. Appellant went to the back of the store where the store security guard, Henry Dupree ("Dupree") was located. Although some evidence indicated that no struggle occurred, appellant testified that he shot Dupree during an altercation, causing his death.
Appellant then ran to the front of the store, pointed the gun at Lauver, and fired the gun twice. Reacting instantly, Lauver threw up his hands to shield his face. Lauver sustained injuries to his left jaw and left forearm. Appellant and Brooks then ran out of the store, and joined Harth and Washington in the Pontiac. Ultimately, Sergeant Ronald Stih ("Stih") of the Euclid Police Department began pursuit of appellant's vehicle, and a high-speed chase ensued, during which appellant fired at Stih's vehicle several times. After numerous police officers arrived at the scene, appellant was arrested.
The Lake County Grand Jury indicted appellant on seven counts. Count one was for aggravated murder, R.C. 2903.01, with death penalty specifications, R.C. 2929.04. Counts two and three charged attempted aggravated murder, R.C. 2923.02 and R.C. 2903.01, aggravated felonies of the first degree, with firearm specifications, R.C. 2921.141. Count four alleged felonious assault of a peace officer, R.C. 2903.11, an aggravated felony of the first degree, with a firearm specification. Count five charged aggravated robbery, R.C. 2911.01, an aggravated felony of the first degree, with a firearm specification. Count six alleged the failure to comply with the order or signal of a police officer, R.C. 2921.331, a felony of the fourth degree. Count seven charged having a weapon under a disability, R.C. 2923.13, a felony of the fourth degree.
On August 31, 1994, appellant was arraigned pursuant to the indictment and pleaded not guilty to all counts. The court also ordered that appellant was to be held without bail. The trial court appointed John Hawkins and James B. Ritts to represent appellant, at the state's expense, on September 14, 1994.
On November 25, 1994, appellant filed a motion to suppress statements that he made at the Eastlake Police Department to Lieutenant Thomas Doyle ("Doyle") and to suppress the pretrial identification of appellant. The trial court overruled this motion in a judgment entry filed on January 11, 1995.
Beginning on February 2, 1995, the matter proceeded to a jury trial. On February 16, 1995, the jury found appellant guilty on count one, aggravated murder and all three accompanying specifications; guilty on counts two and three, attempted aggravated murder, along with the firearm specifications; guilty on count four, felonious assault of a peace officer, and the firearm specification; and guilty on count five, aggravated robbery, with a firearm specification. The court subsequently entered a nolle prosequi on count six, the failure to comply with the order or signal of a police officer. Further, on February 22, 1995, appellant pleaded guilty to count seven, having a weapon under a disability.
On February 21, 1995, the penalty phase on count one, aggravated murder, began. At its conclusion, the jury recommended that appellant be sentenced to death on the aggravated murder charge. In a judgment entry filed on March 2, 1995, the trial court adopted the jury's recommendation of the sentence of death. The court also sentenced appellant to three years actual incarceration for the firearm specification on the aggravated murder charge, which was to be served consecutively with the sentences imposed on the other counts. The court also held that appellant's sentence on count seven, having a weapon under a disability, would merge with the sentence on count one.
On count two, attempted aggravated murder, the court sentenced appellant to serve an indefinite term of imprisonment of ten to twenty-five years to be served consecutively to three years of actual incarceration on the firearm specification. The court further held that count four, felonious assault of a peace officer, would merge into count three, attempted aggravated murder, for purposes of sentencing. On those counts, the court sentenced appellant to an indefinite term of ten to twenty-five years of imprisonment, to be served consecutively to the three years of actual incarceration on the firearm specification. On count five, aggravated robbery, the court sentenced appellant to an indefinite prison term of ten to twenty-five years. The court also found that the firearm specification on this count would merge with the firearm specification on count one.
On March 7, 1995, the trial court issued its opinion pursuant to R.C. 2929.03(F), in which it concluded that the aggravating circumstance regarding appellant's aggravated murder conviction outweighed the mitigating factors beyond a reasonable doubt. Thus, the court sentenced appellant to death on count one. On April 5, 1995, the trial court granted appellant's stay of execution pending appeal. This court affirmed appellant's conviction on direct appeal. State v. Treesh (Oct. 16, 1998), Lake App. No. 95-L-057, unreported.
Appellant filed a petition for postconviction relief on December 5, 1996, and filed an amended petition on February 3, 1997. Appellee, the state of Ohio, filed a response to appellant's petition and a motion to dismiss the petition without a hearing on February 27, 1998. In a judgment entry filed on April 9, 1998, the trial court overruled appellant's petition for postconviction relief without conducting a hearing. In a judgment entry filed on July 8, 1998, this court remanded the matter pursuant to App.R. 9(E) so that the trial court could address several of appellant's causes of action that were not discussed in the April 9, 1998 judgment entry. On August 14, 1998, the trial court again entered judgment dismissing appellant's petition without a hearing. Appellant now asserts the following assignments of error:
 "I. The trial court committed prejudicial error by failing to address all of the causes of action propounded by [appellant] in his amended petition in violation of [R.C.] 2953.21(F).
 "II. The trial court erred by denying [appellant's] first cause of action asserting ineffective assistance of counsel relating to the trial attorneys' failure to introduce evidence to negate the purposeful requirement of aggravated murder.
 "III. The trial court erred by denying [appellant's] second cause of action asserting ineffective assistance of counsel relating to the trial attorneys' failure to request the appointment of its own blood spatter expert.
 "IV. The trial court erred by denying [appellant's] third cause of action asserting ineffective assistance of counsel relating to the trial attorneys' failure to obtain a report and expert testimony of its appointed neurologist.
 "V. The trial court erred by denying [appellant's] fourth cause of action asserting ineffective assistance of counsel and conflict of interest with respect to trial attorney Hawkins' dual representation of [appellant] and Detective Thomas Doyle, a key witness of the state.
 "VI. The trial court erred by failing to grant a post conviction [sic] hearing regarding previously excluded testimony of trial attorney [Albert] Purola at the mitigation phase of the trial.
 "VII. The trial court erred by denying [appellant's] fifth, sixth, eighth, ninth and tenth causes of action as asserted in his amended petition, thereby violating his federal and state constitutional rights."
In the first assignment of error, appellant argues that the trial court erred by failing to address all of causes of action asserted in his amended petition. In the present case, this court remanded the matter to the trial court to address the three claims added in appellant's amended petition for postconviction relief. The trial court complied by filing an amended judgment entry that addressed all ten of appellant's claims for relief. Therefore, appellant's first assignment of error is moot.
In the second assignment of error, appellant contends that the trial court erred by overruling his petition for postconviction relief with respect to the first cause of action, which asserted ineffective assistance of counsel due to his trial counsel's failure to introduce certain evidence that purportedly would have negated the purposeful element of aggravated murder. Specifically, appellant asserts that his trial counsel was ineffective for failing to introduce evidence of appellant's prior crimes in which his modus operandi was to rob a store and to tie the victims up to facilitate his escape. Appellant asserts that this evidence would have supported the theory that appellant only intended to rob the store, but did not intend to kill any of its occupants.
R.C. 2953.21 states:
 "(C) * * * Before granting a hearing, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition and supporting affidavits, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. * * * If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal.
"* * *
 "(E) Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending."
Thus, a hearing is not required in every case. State v.Guerrriero (Sept. 26, 1997), Ashtabula App. No. 96-A-0078, unreported, at 4. The test is whether there are substantive grounds for relief based upon the record and affidavits before the court. Id. at 4, citing State v. Jackson (1980), 64 Ohio St.2d 107,110.
In assessing a claim of ineffective assistance of counsel:
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Strickland v. Washington (1984), 466 U.S. 668, 687.
The Supreme Court of Ohio has explained that in order to satisfy the second prong of the Strickland test, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus.
Here, our first inquiry is whether appellant's counsel's failure to offer the evidence of other crimes constituted deficient performance. "Debatable trial tactics generally do not constitute a deprivation of effective counsel. State v. Phillips
(1995) 74 Ohio St.3d 72, 85. See, also, State v. Clayton (1980),62 Ohio St.2d 45, 49.
In the present case, relying on Evid.R. 404(B), appellant's trial counsel successfully excluded any evidence or mention of appellant's prior crimes. We cannot conclude that this effort constituted a deficient performance by counsel. A review of the police reports relating to appellant's prior robberies reveals numerous statements that would have further jaundiced the jury's view of appellant. In one report, the victim of an armed robbery stated that a suspect matching appellant's general description told her, "I'm going to splatter you." The victim further related that appellant further exclaimed, "I'm gonna kill everybody in the store." Moreover, in a statement describing another robbery that purportedly involved appellant, the victims, two female employees of a video store, were tied up. However, the victims also stated that a suspect matching appellant's description pulled down their pants and underwear and pulled their shirts and bras over their heads. One of the victims stated that one of the assailants also touched her vagina.
Based upon the prejudicial nature of these allegations, we cannot conclude that the failure to attempt to develop this evidence constituted ineffective assistance of counsel. Appellant's trial counsel properly limited the inquiry at trial to the events of the night of the murder of Dupree. If counsel had pursued this line of questioning, the jury would have perceived appellant as one who not only had committed numerous other armed robberies while threatening the victim's lives, but also as a sexual offender. In summary, appellant's trial counsel was not ineffective in deciding to exclude evidence of appellant's other acts, including armed robberies and sexual crimes. Therefore, appellant has not demonstrated a substantive ground for relief on this basis. Appellant's second assignment of error is without merit.
In the third assignment of error, appellant asserts that the trial court erred in dismissing his petition without a hearing regarding his claim of ineffective assistance of counsel on the basis that trial counsel did not request the appointment of a blood spatter expert. In State v. Cole (1982), 2 Ohio St.3d 112, syllabus, the Supreme Court of Ohio held:
 "Where defendant, represented by new counsel upon direct appeal, fails to raise therein the issue of competent trial counsel and said issue could have fairly been determined without resort to evidence dehors the record, res judicata
is a proper basis for dismissing defendant's petition for postconviction relief."
In the present case, appellant raised the issue of the competency of trial counsel in his direct appeal to this court.Treesh, supra, at 89. He could have raised the failure to request a blood spatter expert as a basis of deficient performance by counsel at that time, but failed to do so. Also, he has not supported this allegation with any evidence dehors the record. Accordingly, the trial court properly barred this claim on the basis of res judicata. Appellant's third assignment is without merit.
In the fourth assignment of error, appellant argues that the trial court erroneously dismissed his petition for postconviction relief concerning his cause of action relating to the failure of trial counsel to call a court-appointed neurologist, Dr. Brickel, to testify at trial. Again, appellant has not supported this claim with any evidence dehors the record that indicate that Dr. Brickel's testimony would have assisted the defense. Therefore, this argument could and should have been raised on direct appeal, and accordingly, is barred by res judicata.
In fact, appellant's trial counsel submitted a bill to the court for compensation of expenses for work performed by Dr. Brickel. The billing statement included an indication that Dr. Brickel performed tests on appellant, including an electroencephalograph (EEG), on December 29, 1994. Appellant has not introduced any evidence indicating that the results of those tests would have assisted the defense. Furthermore, Sandra McPherson, Ph.D., a court appointed psychologist, did testify for appellant at trial, and administered numerous tests evaluating appellant's intelligence and psychological condition. In summary, appellant has not presented any evidence dehors the record supporting this claim of ineffective assistance of counsel.
Moreover, the record demonstrates that appellant's counsel actually did pursue the issue of appellant's potential neurological and/or psychological problems. Thus, the trial court properly dismissed this claim. Appellant's fourth assignment of error is not well-founded.
In his fifth assignment of error, appellant argues that the trial court erroneously dismissed his claim asserting that his trial counsel was ineffective because one of his two attorneys, John Hawkins, had a conflict with Doyle, a key witness for the state. Again, appellant has not supported this claim with evidence dehors the record. Appellant could have raised this argument on direct appeal, but he did not. Thus, the trial court properly relied on res judicata to dismiss this claim.
Assuming, arguendo, that this assertion is not barred by resjudicata, it is without merit. In Cuyler v. Sullivan (1980),446 U.S. 335, 350, the Supreme Court of the United States held that "the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance."Cuyler, however, involved an attorney representing one of three defendants accused of a homicide. In the present case, appellant has not advanced any argumentation indicating that this purported conflict affected Attorney Hawkins' representation. On the contrary, the record indicates that Attorney Hawkins advanced a vigorous defense.
Moreover, DR-5-105(A) and (B) provide certain situations in which an attorney shall decline accepting a client. However, DR 5-105(C) states:
 "In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."
In the case sub judice, Attorney Hawkins stated that he was presently representing Doyle in his divorce proceeding and that he and Doyle were social friends. However, Attorney Hawkins added that he and Doyle had been on opposite sides of cases in the past, including a capital murder case, and that he did not foresee a problematic conflict. At the hearing on this issue, both appellant and Doyle stated that they had no objection to Attorney Hawkins continuing to represent appellant. Additionally, the trial court had the following colloquy with appellant on this issue:
 "THE COURT: Mr. Treesh, do you understand what this is all about?
"THE DEFENDANT: Yes, sir.
 "THE COURT: Do you understand the waiver of apparent conflict as indicated by your attorney?
"THE DEFENDANT: Yes, sir.
 "THE COURT: For the record, I have in front of me, `I, Frederick Treesh, acknowledge that I have been advised by my attorney, John Hawkins, that Mr. Hawkins represents Eastlake Detective Thomas Doyle in the domestic relations case Doyle v. Doyle, and I do further consent to John Hawkins continuing, along with James Ritts, as my trial counsel and furthermore, I am not requesting a change of counsel.'
 "You would be entitled to a change of counsel if you so desire. Do you desire a change of counsel at this time?
 "THE DEFENDANT: No, sir, I have been aware of this from day one."
Appellant and Attorney Hawkins signed a "Waiver of Apparent Conflict" in conjunction with the hearing. Furthermore, because the domestic relations matter involving Doyle was entirely separate from the proceedings involving appellant, we perceive no irreconcilable conflict resulting from Hawkins' representation of both individuals. Appellant's fifth assignment of error is without merit.
In the sixth assignment of error, appellant contends that the trial court committed error by dismissing his claim that the trial court erred by excluding the testimony of Attorney Albert Purola. However, we rejected this same argument on direct appeal; thus, this assertion is properly barred by res judicata. Treesh, supra, at 99-101. In determining that this argument is not well-founded, we stated:
 "* * * [The trial court did not abuse its discretion in disallowing the testimony of Attorney Purola during the mitigation phase based on the lack of relevancy and the potential inaccuracies and misstatements involved in the proffered statements. We further note that appellant presented the testimony of [Dr. Sandra] McPherson regarding the recidivism rate of released offenders over the age of fifty to sixty years old. Consequently, the jury was provided with testimony pertaining to the gravity of the threat appellant would pose to the community if released from incarceration after serving a life sentence. Additionally, based on the instructions, the jury was able to consider a life sentence of twenty to thirty years with parole eligibility." Treesh, supra, at 101.
Appellant's sixth assignment of error is not well-taken.
In the seventh assignment of error, appellant argues that the trial court erred in dismissing his petition for postconviction relief with respect to the fifth, sixth, eighth, ninth and tenth causes of action. We will address each of these claims individually.
In the fifth cause of action, appellant alleged that he was deprived of his right to an impartial jury because the trial court did not exclude certain jurors who were either familiar with the case or had a preference for the death penalty. However, appellant has failed to provide any specific argumentation in support of this assertion and has not identified any of the jurors who should have been removed for cause.
Initially, we note that appellant raised this issue on direct appeal with respect to one juror, Lynn Volke. We determined that the trial court did not abuse its discretion in overruling appellant's motion to excuse Ms. Volke for cause. Treesh, supra, at 53. Thus, this issue has already been raised on direct appeal. Moreover, any other purported failure to remove a juror for cause could have been raised on direct appeal. Accordingly, any such claim is barred by res judicata.
Also, in his argumentation with respect to the fifth claim for relief, appellant argues that the trial court erred in overruling his request for discovery. However, this court has previously held that a petitioner is not entitled to discovery in a postconviction relief proceeding. State v. Lorraine (Feb. 23, 1996), Trumbull App. No. 95-T-5196, unreported, at 10-11; State v.Hill (June 16, 1995), Trumbull App. No. 94-T-5116, unreported. In summary, the trial court properly dismissed appellant's fifth claim.
In the sixth claim, appellant argued that he was entitled to relief because appellee either lost or destroyed certain pieces of evidence, including a ramp, wall panels, and doors of the crime scene, and the failure to check Dupree's weapon and handcuffs for fingerprints. Again, the trial court properly dismissed this claim on res judicata grounds because this court rejected these identical arguments in appellant's direct appeal to this court.Treesh, supra, at 38-41. Thus, the trial court did not err in dismissing appellant's sixth claim for relief.
In his eighth claim for relief, appellant argued that the trial court's decision to make appellant decide whether he would be executed by lethal injection or electrocution violated the constitutional ban against cruel and unusual punishment. However, this claim is not supported by evidence dehors the record and could have been raised on direct appeal; thus, this assertion is barred by res judicata.
In his tenth claim for relief, appellant asserted that his trial counsel's performance was ineffective because they did not request additional voir dire between the guilt and penalty phases when five days elapsed between the proceedings. Appellant asserts that additional voir dire was necessary to assure that no outside influence in the form of media coverage had affected the jury's evaluation of the case.
However, appellant has not submitted evidence dehors the record in support of this assertion. Furthermore, appellant raised the issue of ineffective assistance of counsel in his direct appeal, but did not raise this specific argument. Thus, this assertion is barred by res judicata. Moreover, this argument is substantively without merit because the record shows that the trial court specifically instructed the jury at the conclusion of the guilt phase:
 "Ladies and gentlemen of the jury, at this point I have two options. If you can promise me to follow my instructions and not discuss this case with anyone, nor let anyone discuss this case with you, and do not read the paper, listen to the radio or watch any television, nor let anyone, including the media, discuss this case with you, I will adjourn this matter until Tuesday morning at 9:00 o'clock, you will be able to return to your homes. If you do not abide by these instructions I will have to sequester you over the weekend. You have followed my instructions so well that I don't believe there will be any problems.
 "If you can all, again, promise me that you will not discuss this matter with your family or have any discussions amongst yourselves even if you happen to see each other until we return to the mitigation phase, which will be Tuesday morning at 9:15. Can you all promise me that?
"(All jurors collectively answered yes.)"
Since we must presume that jurors follow the judge's instructions, we conclude that the jurors followed these instructions by the trial court. State v. Garner (1995), 74 Ohio St.3d 49,59. Thus, the trial court properly dismissed appellant's petition regarding his tenth claim for relief.
Finally, in his ninth claim for relief, appellant argued that the cumulative effect of errors that contained in his petition rendered his conviction and death sentence void or voidable. However, because we have concluded that none of appellant's claims for relief have merit, this assertion is also not well-founded. Appellant's seventh assignment of error is not well-taken.
For the foregoing reasons, appellant's assignments of error are without merit. The judgment of the trial court is affirmed. ________________________________ PRESIDING JUDGE DONALD R. FORD
CHRISTLEY, J.,
O'NEILL, J., concur.